UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MARTIN T. SOLOMON ,

        Plaintiff,        Case No. 2:11-cv-287

v.        Honorable R. Allan Edgar

UNKNOWN GOLLODAY, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Caruso, Napel, Alexander, Thomas Mohrman, Hofbauer, the Michigan Parole Board, Aguirre, Thomas, Montgomery, Stapleton, Russell, Unknown Bonnie, Eicher, Carthy, Derossie, Kocha, the MDOC, URF, and MBP .

**Discussion**

I. Factual allegations

Plaintiff Martin T. Solomon, a state prisoner currently confined to the Oaks Correctional Facility, filed this civil rights action pursuant to 42 U.S.C. § 1983 against numerous Defendants as follows: Unknown Golloday, Grievance Coordinator Glen Carol, MDOC Director Patricia L. Caruso, Warden Robert Napel, Deputy Warden James Alexander, Hearing Officer Thomas Mohrman, Resident Unit Manager and Acting Assistant Deputy Warden K. Niemosto, Librarian K. Kero, Sergeant D. Makela, Sergeant M. Cody, Sergeant L. Buckner, Inspector Shane Place, Warden Gerald Hofbauer, MDOC Parole Board, Parole Board Member Robert Aguirre, Parole Board Member Laurin Thomas, R.N. S. Montgomery, Resident Unit Officer M. Clark, Hearing Investigator R. Mohr, Hearing Investigator M. Mohrman, Hearing Administrator Richard Stapleton, Resident Unit Officer M. Forrest, Step III Respondent, Resident Unit Officer Daniel Eicher, Resident Unit Manager D. Mansfield, Quartermaster Jon L. Hall, Assistant Warden J. Andrezjak, Unknown Bonnie, Nurse Dawn Eicher, Corrections Officer Unknown Batho, Assistant Deputy Warden Jackie Nadeau, Library Manager A. Winnick, Resident Unit Officer Unknown Wartella, Assistant Resident Unit Supervisor K. Dunton, Resident Unit Manager M. Lacross, Deputy Warden Duncan Maclaren, Assistant Resident Unit Supervisor Arthur Derry, Lieutenant M. Brown, Resident Unit Officer Brian Peterson, Nurse Supervisor Unknown Covert, Beck Nylander, Unknown Scott, Unknown McDonald, Unknown Sherbert, George Bennett, K. Woods, M. McLean, Sergeant Unknown Henderson, Sergeant Unknown Touri, Unknown Bradley, Unknown Braon, Chad Lacount, Unknown Mercier, Unknown Sunhole, M. Tallio, Unknown Pokily, Unknown Sebaly, Jamie Rubic, M. Carthy, T. Derossie, S. Schroeder, Lin Tribley, Unknown Stanolis, Unknown Kocha, M. McMahon, James Wallis, Michigan Department of Corrections, Chippewa Correctional Facility, Marquette Branch Prison, C. Morta, and C. Alto.

Plaintiff's complaint consists of voluminous allegations against the named Defendants, which will be addressed in the analysis of Plaintiff's claims. Plaintiff also makes allegations against individuals not named as Defendants in this case, which the court need not address. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that various Defendants interfered with his right to the grievance process by improperly denying grievances, refusing to process grievances, refusing to give him forms and placing him on modified access to the grievance procedure. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); see also *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Plaintiff states that Defendants violated his right of access to the courts when they denied him participation in the legal writer program, denied him certain legal materials, and refused to give him all of the writing materials he was entitled to under MDOC policy. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to

court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996).  Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance.  *Id.* at 351 (1996).  Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards.  *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

        To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim.  *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).  An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced.  *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property.  *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).  Plaintiff in this case has not alleged facts showing that he suffered an actual injury in his pursuit of a legal claim.  Therefore, his access to courts claims are properly dismissed.

        Plaintiff claims that Defendants have falsified misconduct tickets against him in order to keep him in segregation, which has resulted in the denial of parole.  To determine whether segregation

of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Although plaintiff states that his placement in segregation has been "atypical and significant," he merely uses the legal jargon and presents no factual allegations to support his conclusion. Plaintiff has failed to make any allegations which support a finding that his segregation is "atypical and significant." Consequently, the court concludes that no liberty interest is implicated by his placement.

Nor does Plaintiff have a liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an

inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1158 (1995), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1995 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and had continued to find that Michigan's Parole scheme creates no liberty interest in being released on parole. *See Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000), *cert. denied*, 121 S. Ct. 1616 (2001); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000), *cert. denied*, 531 U.S. 1197 (2001); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit also has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995), *cert. denied*, 522 U.S. 1057 (1998); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. April 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Accordingly, Plaintiff has no liberty interest at stake. Because Plaintiff has no liberty interest at stake, he fails to state a claim

for a violation of his procedural due process rights with regard to the denial of parole. *See Sweeton*, 27 F.3d at 1164-65.

Moreover, Defendants Aguirre and Laurin Thomas are members of the Michigan Parole Board. Members of a parole board have absolute immunity from damages liability for actions taken in the performance of their duties regarding the decision to grant or deny parole because that task is functionally comparable to that of a judge. *Hawkins v. Morse*, No. 98-2062, 1999 WL 1023780, at *1 (6th Cir. Nov. 4, 1999); *Tillman v. Price*, No. 96-2032, 1997 WL 225993, at *1 (6th Cir. May 5, 1997); *Ward v. Moss*, No. 94-1417, 1994 WL 664948, at *1 (6th Cir. Nov. 23, 1994); *accord Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998); *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996); *Anton v. Getty*, 78 F.3d 393, 396 (8th Cir. 1996); *Little v. Bd. of Pardons, and Parole Div.*, 68 F.3d 122, 123 (5th Cir. 1995) (per curiam); *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992). The actions for which plaintiff complains were taken by defendant Parole Board members in their quasi-judicial function of deciding whether to grant or deny plaintiff's parole; therefore, they are entitled to absolute immunity.

Plaintiff claims that Defendant Derry improperly confiscated his property without a hearing as required by MDOC policy. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation

remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's claim that Defendant Derry improperly confiscated his property will be dismissed.

Plaintiff claims that health care Defendants Bonnie, Eicher, and Kocha misdiagnosed his ear infection, which caused him to suffer hearing loss. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is

deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said
> to constitute an unnecessary and wanton infliction of pain or to be
> repugnant to the conscience of mankind. Thus, a complaint that a

> physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In this case, Plaintiff claims that Defendants Bonnie, Eicher, and Kocha diagnosed him as having excess ear wax and treated him for that condition. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

In addition, Plaintiff claims that his request for an MRI was denied and that when he complained to Defendant Montgomery, she told him that she was fed up with his grievances. However,

merely stating that she is unhappy with Plaintiff's use of the grievance system does not state a claim for relief under federal law.

Plaintiff claims that Defendants Carthy and Derossie failed to provide him with proper food portions according to MDOC policy. However, Plaintiff fails to specify the amount of food received or whether he suffered any ill effects to his health as a result. As the Supreme Court has observed, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Plaintiff's allegations about improper food portions are wholly conclusory. As a result, his allegations create no inference of a serious risk to inmate health or safety.

Defendant Thomas Mohrman is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Plaintiff's claims against Defendant Thomas Mohrman are properly dismissed.

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections or the Michigan Parole Board, which is part of the Michigan Department of Corrections. MICH. COMP. LAWS § 791.231a(1). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections and the Michigan Parole Board.

Plaintiff also names the Chippewa Correctional Facility (URF) and the Marquette Branch Prison (MBP) as Defendants. An express requirement of 42 U.S.C. § 1983 is that the defendant be a "person." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). URF and MBP are administrative units of the Michigan Department of Corrections. Neither a prison nor a state corrections department is a "person" within the meaning of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Furthermore, Plaintiff's claims against these Defendants are barred by the Eleventh

Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). That amendment prohibits suits in federal court against the state or any of its agencies or departments. *Pennhurst State School & Hosp. v. Haldermann*, 465 U.S. 89, 100 (1984). A state's Eleventh Amendment immunity is in the nature of a jurisdictional defense and may be raised on the court's own motion. *Estate of Ritter v. University of Michigan*, 851 F.2d 846, 851 (6th Cir. 1988). The Supreme Court has squarely held that the Eleventh Amendment bars federal suits against state departments of corrections. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam). URF and MBP are therefore not subject to a section 1983 action.

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the

official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Caruso, Napel, Alexander, Hofbauer, Stapleton, and Russell were personally involved in the activity which forms the basis of his claim. The only roles Defendants Caruso, Napel, Alexander, Hofbauer, Stapleton, and Russell had in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso, Napel, Alexander, Hofbauer, Stapleton, and Russell cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Caruso, Napel, Alexander, Hofbauer, Stapleton, and Russell are properly dismissed for lack of personal involvement.

Plaintiff's complaint asserts that the remaining Defendants conspired to retaliate against Plaintiff for his extensive use of the grievance system. However, Plaintiff failed to file his complaint on the requisite form. If Plaintiff wishes to proceed with his action against those Defendants not dismissed pursuant to this opinion, he must carefully fill out the form and submit it to the Court. The

Court directs the Clerk to send to Plaintiff a copy of the form complaint under 42 U.S.C. § 1983 for a civil action by a person in state custody. Plaintiff shall submit an amended complaint by filing his complaint on the requisite form within twenty-eight (28) days from the date of entry of this order. The amended complaint will take the place of the original complaint, so it must include all of the Defendants that Plaintiff intends to sue and all of the claims that Plaintiff intends to raise. However, Plaintiff is instructed not to reassert claims already dismissed by this court pursuant to this opinion. Plaintiff need not re-submit supporting exhibits filed with the original complaint. The case number shown above must appear on the front page of the amended complaint. If Plaintiff fails to submit an amended complaint in proper form within the time allowed, the complaint may be dismissed without prejudice by the court.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's due process claims regarding interference with the grievance process, the denial of parole, placement in administrative segregation, denial of a legal writer, deprivation of property, and his claim that he was denied access to courts are properly dismissed. In addition, Defendants Caruso, Napel, Alexander, Thomas Mohrman, Hofbauer, the Michigan Parole Board, Aguirre, Thomas, Montgomery, Stapleton, Russell, Unknown Bonnie, Eicher, Carthy, Derossie, Kocha, the MDOC, URF, and MBP will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An Order consistent with this Opinion will be entered.

Dated:      6/28/2012                        /s/ R. Allan Edgar
                                             R. Allan Edgar
                                             United States District Judge